UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- X
ERICK HESS,                             :
                                        :
          Plaintiff,                    :     CASE NO.: _____
                                        :
    -against-                           :     **COMPLAINT**
                                        :
PROGENICS PHARMACEUTICALS, INC.,        :     **DEMAND FOR JURY TRIAL**
DAVID W. MIMS, PAT FABBIO, ANN          :
MACDOUGALL, GÉRARD BER,                 :
BRADLEY L. CAMPBELL, ERIC J. ENDE,      :
KAREN JEAN FERRANTE, and HEINZ          :
MÄUSLI,                                 :
                                        :
          Defendants.                   :
--------------------------------------- X

Plaintiff Erick Hess ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Progenics Pharmaceuticals, Inc. ("Progenics" or the "Company") and members of the Company's executive officers and board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Progenics, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed acquisition by Lantheus Holdings, Inc. ("Lantheus"), to acquire all of the issued and outstanding shares of the Company.

2. On October 1, 2019, Progenics entered into an Agreement and Plan of Merger (the

1

"Merger Agreement") by and among the Company, Lantheus, and Plato Merger Sub, Inc. ("Merger Sub"), an entity formed for the sole purpose of completing the merger, pursuant to which Merger Sub will merge with and into the Company, with the Company surviving the merger as a wholly-owned subsidiary of Lantheus (the "Proposed Transaction").

3. Under the terms of the Merger Agreement, each stockholder of Progenics common stock will be entitled to receive .2502 shares of Lantheus common stock per each share of Progenics common stock held by them (the "Merger Consideration").

4. On November 12, 2019, in order to convince Progenics' public common stockholders to vote in favor or against the merger, the Board authorized the filing of a materially incomplete and misleading Joint Registration Statement on Form S-4 (the "Registration Statement") with the SEC. The Registration Statement contains materially incomplete and misleading information concerning the valuation analyses performed by Progenics' financial advisor, Jefferies LLC ("Jefferies"), in support of its fairness opinion.

5. The shareholder vote will be scheduled in the coming weeks, as the Proposed Transaction is set to close in the first quarter of 2020 (the "Shareholder Vote"). It is imperative that the material information that has been omitted from the Registration Statement is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

6. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Progenics' public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the

event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. The Company has its principal executive offices at One World Trade Center, 47th Floor, New York, New York 10007. Moreover, the Company's common stock trades on the Nasdaq, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Progenics common stock.

12. Defendant Progenics is a Delaware company with its principal executive office located at One World Trade Center, 47th Floor, New York, New York 10007. Progenics develops, manufactures, and commercializes pharmaceutical products and other technologies to target, diagnose, and treat cancer in the United States and internationally. Progenics' common stock trades on the Nasdaq under the ticker symbol "PGNX."

13. Defendant David W. Mims has served as Interim Chief Executive Officer of the Company since November 2019.

14. Defendant Pat Fabio is, and has been at all relevant times, Chief Financial Officer and Executive Vice President of the Company.

15. Defendant Ann MacDougall has served as Interim Chairman of the Board since November 2019.

16. Defendant Gérard Ber has served as a director of the Company since November 2019.

17. Defendant Bradley L. Campbell is, and has been at all relevant times, a director of the Company.

18. Defendant Eric J. Ende has served as a director of the Company since November 2019.

19. Defendant Karen Jean Ferrante is, and has been at all relevant times, a director of the Company.

20. Defendant Heinz Mäusli has served as a director of the Company since November 2019.

21.     The defendants identified in paragraphs 13 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Progenics, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A. Background of the Proposed Transaction**

22.     Progenics, which has been listed on Nasdaq since 1997, was incorporated in Delaware in 1986, commenced principal operations in 1988, and throughout has been engaged primarily in pharmaceutical research and development efforts. Today, Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight and follow cancer.

23.     Lantheus was incorporated under the laws of the State of Delaware in November 2007 under the name ACP Lantern Holdings, Inc. In 2008, ACP Lantern Holdings, Inc. changed its name to Lantheus MI Holdings, Inc. and, in 2014, changed its name again to Lantheus Holdings, Inc. Lantheus Holdings is a leader in the development, manufacturing, and commercialization of innovative diagnostic medical imaging agents and products across a range of imaging modalities, including echocardiography and nuclear imaging. Lantheus' commercial products are used by cardiologists, nuclear physicians, radiologists, internal medicine physicians, technologists and sonographers working in a variety of clinical settings.

24.     On October 2, 2019, Progenics and Lantheus jointly announced the Proposed Transaction. The press release stated as follows:

**Lantheus to Acquire Progenics to Form a Leading Precision
Diagnostics Imaging and Therapeutics Company**

*Highly Complementary Portfolio of Ultrasound and Radiopharmaceutical*

*Diagnostics and Oncology Therapeutics*

*Lantheus' Proven Commercial, Manufacturing and Operational Excellence Well Positioned to Optimize the Combined Company's Innovative Diagnostic and Radiopharmaceutical Portfolio*

*Progenics Shareholders to Receive 0.2502 Shares of Lantheus Common Stock for Each Share of Progenics Stock in All-Stock Transaction*

*Exchange Ratio Represents ~35% Aggregate Ownership Stake in the Combined Company and Implies Premium of 21.5% to Progenics' 30-Day VWAP*

*Diversifies Revenue Streams, Enhances Cash Flow Generation and Positions Combined Company for Sustainable, Long-Term, Profitable Growth*

**NORTH BILLERICA, MA and NEW YORK**, October 2, 2019 -- Lantheus Holdings, Inc. (NASDAQ: LNTH) ("Lantheus"), parent company of Lantheus Medical Imaging, Inc. ("LMI"), a leader in the development, manufacture and commercialization of innovative diagnostic imaging agents and products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX) ("Progenics"), an oncology company developing innovative medicines and artificial intelligence to find, fight and follow cancer, today announced a definitive agreement for Lantheus to acquire Progenics in an all-stock transaction. The transaction has been unanimously approved by the Boards of Directors of both companies.

Under the terms of the agreement, Lantheus Holdings will acquire all of the issued and outstanding common shares of Progenics stock at a fixed exchange ratio. Progenics shareholders will receive 0.2502 shares of Lantheus Holdings stock for each share of Progenics stock, representing approximately a 35% aggregate ownership stake in the combined company. The exchange ratio implies a 21.5% premium to Progenics' 30-day volume weighted average closing stock price ("VWAP").1

Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight and follow cancer. Progenics takes a leading role in developing diagnostics that help guide physicians and therapeutics that treat patients. The company's oncology-focused portfolio currently includes three FDA approved products as well as a rich product pipeline. AZEDRA®, approved in July 2018, is the first and only FDA approved product used to treat adult and pediatric patients 12 years and older for the ultra-orphan indications of pheochromocytoma and paraganglioma. Progenics' other approved products are oral and subcutaneous formulations

6

of RELISTOR®, which are licensed to Bausch Health Companies Inc.

The combination of Lantheus and Progenics forms an innovative company with a diversified diagnostic and therapeutics portfolio. The transaction leverages Lantheus' long-standing expertise in complex manufacturing, supply chain and commercial excellence, with Progenics' three leading FDA approved products, clinical pipeline and development capabilities. Anchored by Lantheus' leading microbubble franchise, the resulting company's robust portfolio includes additional radiopharmaceutical products for precision diagnostics and therapeutics in the field of oncology as well as a related artificial intelligence platform with a 510(k) approved application in oncology. The two companies had pro forma combined revenue of $370.1 million for the 12 months ended June 30, 2019.

"A long-term pioneer in medical diagnostics, Lantheus remains an industry leader in radiopharmaceuticals as well as the world-wide leader of ultrasound contrast agents. With this combination, we broaden our reach in emerging uses of radioisotopes for precision diagnostics and the exciting and expanding field of radiopharmaceuticals in oncology treatment," said Mary Anne Heino, President and Chief Executive Officer of Lantheus. "Lantheus will be a leader in radiopharmaceutical innovation, providing medical professionals with essential tools and therapies to diagnose and treat neuroendocrine tumors and prostate cancer patients. Our complementary strengths, radiopharmaceutical manufacturing and supply chain expertise, and focus on commercial execution will deliver sustainable and diversified revenue streams and increase our gross margin potential. We have assessed the strategic fit with Progenics for a number of years and I am pleased that we are finally able to make this combination come to fruition; I believe that the combined company will be well positioned for long-term value creation for all of our stockholders."

"Today marks the beginning of an exciting new chapter for Progenics. This combination unlocks additional value for stakeholders and stockholders alike through Lantheus' enhanced resources and R&D capabilities, proven commercial expertise and complementary portfolio of products. The transaction also creates value for Progenics stockholders through a significant premium and the opportunity to participate in the future growth of Lantheus," said Mark Baker, Chief Executive Officer of Progenics. "Lantheus shares our confidence in the potential of our promising pipeline, and we believe that Lantheus will provide additional commercialization expertise and resources to further advance AZEDRA's® launch and deliver substantial revenue growth. This compelling opportunity would not have been possible without the hard work and dedication of our talented employees. We have gotten to know Lantheus' Board and management team extremely well as we have discussed this combination over the past nine months and we look forward to working together to continue

developing innovative products to target diseases and improve treatment for patients around the world."

Upon completion of the acquisition, which is intended to be tax-free to Progenics' stockholders for U.S. federal income tax purposes, the combined company will continue to be headquartered in North Billerica, Massachusetts and will trade on the NASDAQ under the ticker symbol: LNTH.

The combined company will be led by Lantheus Chief Executive Officer Mary Anne Heino, who brings 30 years of diverse life sciences industry experience with deep pharmaceutical and operational expertise, including commercializations across complex market channels that will help maximize the success of Progenics' development pipeline and commercial assets. Ms. Heino will be supported by Chief Financial Officer Robert J. Marshall Jr., CFA, who brings over three decades of finance experience, including in healthcare M&A, capital markets, investor relations and corporate financial planning and analysis, and Chief Operations Officer John Bolla, who has over 22 years of diverse supply chain, global operations and manufacturing experience from pilot to full-scale manufacturing of complex pharmaceutical products. Following the closing, Bradley Campbell, currently a member of Progenics' Board of Directors, will be added as a member of the Board of Directors of Lantheus Holdings.

**Compelling Strategic and Financial Rationale**

**Robust portfolio of precision diagnostic and therapeutic products:** With complementary strengths and products, the resulting company will serve patients and healthcare professionals across the continuum of critical diagnosis and care. Progenics enhances Lantheus' R&D platform, combining to form an innovative development portfolio of precision diagnostics and oncology therapeutics.

**Sustainable and diversified revenue growth:** This transaction bolsters and diversifies Lantheus' revenue growth, which is anchored by DEFINITY's® continued strong performance and the expansion of its microbubble franchise. The combined company will focus on advancing the successful commercialization of AZEDRA® to drive revenue growth and on maximizing the value of its development pipeline, which we believe has significant market potential. Supported by Lantheus' proven manufacturing, supply chain and clinical development expertise in the field of radiopharmaceuticals, the combination is expected to drive enhanced revenue growth over the long term.

**Attractive returns and enhanced cash flow generation potential:** Through enhanced revenue growth and significant realizable cost savings

8

opportunities through the elimination of redundant costs and process and scale efficiencies, Lantheus is expected to improve its gross margin profile into the future. The company expects to generate approximately $15 to $20 million in run-rate cost savings by 2022. These savings are related primarily to public company costs and G&A expenses. With improved top line growth, operational execution and synergy opportunities, the transaction is expected to enhance the company's cash flow generation and be accretive to adjusted and reported EPS by 2022 and 2023, respectively.

**Experienced executive management team:** The combined company will be led by a management team with deep experience in the development, manufacturing and commercialization of precision diagnostics and radiopharmaceuticals, and will continue to deploy a team of highly specialized field personnel. The Lantheus Board of Directors is committed to overseeing and incentivizing management to ensure alignment with stockholders' interests.

**Additional Transaction Details**

The transaction is expected to close in the first quarter of 2020, subject to approval by Lantheus and Progenics stockholders, regulatory approvals, and customary closing conditions.

25. The Merger Consideration represents inadequate compensation for Progenics' shares given the Company's strong recent financial performance and bright economic outlook. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Registration Statement, which is necessary for shareholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Merger.

B. **The Registration Statement Omits Certain Material Information**

26. On December 6, 2019, Defendants authorized the filing of a materially incomplete and misleading Registration Statement with the SEC. The Individual Defendants were obligated to carefully review the Registration Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents or omits material information

concerning the financial analyses conducted by Jefferies, information which is necessary for Progenics' shareholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

27. With respect to Jefferies' *Discounted Cash Flow Analysis* of Progenics, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows; (ii) the implied terminal value; (iii) the assumptions behind applying a perpetuity growth rate of (10.00)% to 0.0%; (iv) the inputs and assumptions behind selecting a discount rate range of 11.5% to 12.5%; and (v) the implied enterprise values for Progenics.

28. With respect to Jefferies' *Discounted Cash Flow Analysis* of Lantheus, the Registration Statement fails to disclose: (i) the standalone unlevered, after-tax free cash flows; (ii) the implied terminal value; (iii) the assumptions behind applying a perpetuity growth rate of 3.5% to 4.5%; (iv) the inputs and assumptions behind selecting a discount rate range of 7.8% to 8.8%; and (v) the implied enterprise values for Lantheus.

29. Furthermore, the Registration Statement fails to disclose whether Progenics' $1.29B in Net Operating Loss ("NOLs") at $15.25 per share gross, or Lantheus' $207M in NOLs at $5.37 per share gross, were included in either *Discounted Cash Flow Analysis*.

30. These key inputs are material to Progenics stockholders, and their omission renders the summaries of Jefferies's *Discounted Cash Flow Analyses* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…" *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Without the above-mentioned information, Progenics stockholders cannot evaluate for themselves the reliability of Jefferies' *Discounted Cash Flow Analyses*, and so make a meaningful determination of whether the implied equity value per share ranges reflect the true values of Progenics and Lantheus or was the result of an unreasonable judgment by Jefferies, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

31.     With respect to Jefferies' *Selected Companies Analyses* for both Progenics and Lantheus, the Proxy omits the individual multiples and metrics for the companies observed by Jefferies. A fair summary of a selected companies analysis requires the disclosure of the individual multiples for each company observed. Merely providing the low, high, and median values of the multiples that a banker applied without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analysis provided in the Proxy misleading.

32.     With respect to Jefferies' analyses of premiums paid, the Registration Statement fails to disclose: (i) the transactions observed by Jefferies in the analyses; and (ii) the premiums

paid in the transactions.

33. In sum, the omission of the above-referenced information renders the Registration Statement materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I
### (Against All Defendants for Violation of Section 14(a) of the Exchange Act)

34. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any Registration Statement or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

36. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Registration Statement communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37. The omission of information from a Registration Statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted

information.

38. Defendants have issued the Registration Statement with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding the valuation analyses performed by Jefferies in support of its fairness opinion.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

40. The Individual Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Registration Statement states that Jefferies reviewed and discussed its financial analysis with the Board, and further states that the Board considered the financial analysis provided by Jefferies, as well as the fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details

surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review Jefferies' analysis in connection with their receipt of the fairness opinions, question Jefferies as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

41.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

42.     Progenics is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Registration Statement.

43.     The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**
**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

44. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45. The Individual Defendants acted as controlling persons of Progenics within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Progenics, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

46. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

47. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

48. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the

Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

49. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

50. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

51. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Registration Statement;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 20, 2019

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*