UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
ERICK HESS,                           :
                                      :
            Plaintiff,                :
                                      :
    -against-                         :   Case No. 1:19-cv-11683-VSB
                                      :
PROGENICS PHARMACEUTICALS, INC.,      :
DAVID W. MIMS, ANN MACDOUGALL,        :
GÉRARD BER, BRADLEY L. CAMPBELL,      :
ERIC J. ENDE, KAREN JEAN FERRANTE,    :
and HEINZ MÄUSLI,                     :
                                      :
            Defendants.               :
------------------------------------- X

## AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Erick Hess ("Plaintiff"), by and through his undersigned attorneys, alleges the following upon information and belief, including the investigation of counsel and a review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. This is an action brought by Plaintiff against Progenics Pharmaceuticals, Inc. ("Progenics" or the "Company") and members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Progenics, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and Item 1015 of Regulation M-A, 17 C.F.R. 229.1015. Plaintiff's claims arise in connection with the proposed acquisition of the Company by Lantheus Holdings, Inc. ("Lantheus").

1

2.        On October 1, 2019, the Company, Lantheus, and Plato Merger Sub, Inc. (an entity formed solely for the purpose of completing the merger, "Merger Sub"), entered into an Agreement and Plan of Merger (the "Original Agreement"). After entering the Original Agreement, five members of Progenics board of directors were ousted in a very public contest for control of the Board and the Individual Defendants assumed control of the Company. Thereafter, on February 20, 2020, the parties to the Original Agreement entered into an Amended and Restated Agreement and Plan of Merger (the "Merger Agreement"), which amended and restated the Original Agreement in its entirety. Pursuant to the Merger Agreement, Merger Sub will be merged with and into Progenics, with Progenics continuing as the surviving corporation and a wholly-owned subsidiary of Lantheus (the "Proposed Transaction").

3.        As consideration for the Proposed Transaction, holders of Progenics common stock will be entitled to receive (i) 0.31 of a share of Lantheus common stock for each share of common stock held by them ("Stock Consideration"); and (ii) one contingent value right ("CVR") representing the right to receive a pro rata share of aggregate cash payments equal to 40% of the U.S.net sales generated by PyL (F-DCFPyL), Progenics' prostate-specific membrane antigen targeted imaging agent designed to visualize prostate cancer currently in late stage clinical development, in calendar years 2022 and 2023 in excess of $100 million and $150 million, respectively ("CVR Consideration", together with the Cash Consideration, referred to as the "Merger Consideration").

4.        On March 19, 2020, in order to convince Progenics common stockholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") with the SEC. According to the Proxy, following consummation of the Proposed Transaction Lantheus

stockholders will own approximately 60% of the outstanding shares of common stock of the combined company and former Progenics stockholders will own approximately 40% of the outstanding shares of common stock of the combined company. This exchange is wholly inadequate to compensate shareholders when assessing the values of both companies.

5. In order to solicit shareholder approval for the unfair Proposed Transaction, the Individual Defendants authorized the issuance of the Proxy, which contained materially incomplete and misleading information concerning: (i) the background of the merger; and (ii) the valuation analyses performed by Progenics' financial advisor, BofA Securities, Inc. ("BofA") in support of its fairness opinion.

6. On April 2, 2020, Progenics and Lantheus jointly announced their decision to reschedule their respective special meetings of stockholders to vote on the matters related to the proposed merger of Progenics and Lantheus from April 28, 2020 to June 16, 2020 (the "Shareholder Vote"), due to concerns over the COVID-19 pandemic. It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the Shareholder Vote so they can properly determine whether to vote for or against the Proposed Transaction.

7. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Progenics public common stockholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. The Company has its principal executive offices at One World Trade Center, 47th Floor, New York, New York 10007. Moreover, the Company's common stock trades on the Nasdaq, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003).

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Progenics common stock.

12. Defendant Progenics is a Delaware company with its principal executive office located at One World Trade Center, 47th Floor, New York, New York 10007. Progenics develops, manufactures, and commercializes pharmaceutical products and other technologies to target, diagnose, and treat cancer in the United States and internationally. Progenics' common stock trades on the Nasdaq under the ticker symbol "PGNX."

13. Defendant David W. Mims has served as Interim Chief Executive Officer of the Company since November 2019 and was appointed as a result of Velan Capital L.P.'s ("Velan") October 8, 2019 Consent Solicitation. On March 27, 2020, Defendant Mims was also appointed as Interim Chief Financial Officer of the Company, following the resignation of non-party Pat Fabbio.

14. Defendant Ann MacDougall has served as Interim Chairman of the Board since November 2019 and was appointed as a result of Velan's October 8, 2019 Consent Solicitation.

15. Defendant Gérard Ber has served as a director of the Company since November 2019 and was appointed as a result of Velan's October 8, 2019 Consent Solicitation. Pursuant to the Merger Agreement, following consummation of the Proposed Transaction, he will be appointed to the Lantheus board.

16. Defendant Bradley L. Campbell is, and has been at all relevant times, a director of the Company.

17. Defendant Eric J. Ende has served as a director of the Company since November 2019 and was appointed as a result of Velan's October 8, 2019 Consent Solicitation.

18. Defendant Karen Jean Ferrante is, and has been at all relevant times, a director of the Company.

19. Defendant Heinz Mäusli has served as a director of the Company since November

2019. Pursuant to the Merger Agreement, following consummation of the Proposed Transaction, he will be appointed to the Lantheus board.

20. The defendants identified in paragraphs 12 through 18 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Progenics, the "Defendants."

## RELEVANT NON-PARTIES

21. Pat Fabbio was Progenics' Chief Financial Officer. However, on February 28, 2020, Mr. Fabbio provided notice to the Progenics Board of his intention to resign as Progenics' Chief Financial Officer.

22. Jefferies, LLC ("Jefferies") was Progenics' financial advisor throughout much of the negotiations over the Proposed Transaction. Jefferies provided a fairness opinion to the Original Agreement, providing that it constituted a 'fair' transaction. Upon the arrival of the new Board, Jefferies was dismissed as a financial advisor for undisclosed reasons.

23. BofA is the current financial advisor to Progenics and provided a fairness opinion for the Proposed Transaction.

24. Velan Capital, L.P. is an activist shareholder who, beginning in the fourth quarter of 2018, led a group of dissenting investors (collectively, "Velan") and engaged in a year-long public dispute with management, alleging that Progenics' senior management had not been transparent as to the Company's financial prospect. Progenics dispute with Velan culminated in a proxy fight which enabled Velan, to replace Progenics' Chief Executive Officer Mark Baker and five of seven members of Progenics' Board.

## SUBSTANTIVE ALLEGATIONS

A. **Background of the Proposed Transaction**

25. Progenics, which has been listed on Nasdaq since 1997, was incorporated in Delaware in 1986, commenced principal operations in 1988, and throughout has been engaged primarily in pharmaceutical research and development efforts. Today, Progenics is an oncology company focused on the development and commercialization of innovative targeted medicines and artificial intelligence to find, fight and follow cancer.

26. Lantheus was incorporated under the laws of the State of Delaware in November 2007 under the name ACP Lantern Holdings, Inc. In 2008, ACP Lantern Holdings, Inc. changed its name to Lantheus MI Holdings, Inc. and, in 2014, changed its name again to Lantheus Holdings, Inc. Lantheus Holdings is a leader in the development, manufacturing, and commercialization of innovative diagnostic medical imaging agents and products across a range of imaging modalities, including echocardiography and nuclear imaging. Lantheus' commercial products are used by cardiologists, nuclear physicians, radiologists, internal medicine physicians, technologists and sonographers working in a variety of clinical settings.

27. On February 20, 2020, Progenics and Lantheus jointly issued a press release announcing the change to the Proposed Transaction and entry into the Merger Agreement. The press release stated, in relevant part:

> **Lantheus and Progenics Agree to Amended Transaction Terms**
>
> NORTH BILLERICA, Mass. & NEW YORK--(BUSINESS WIRE)--Feb. 20, 2020-- Lantheus Holdings, Inc. (NASDAQ: LNTH) ("Lantheus"), parent company of Lantheus Medical Imaging, Inc. ("LMI"), a leader in the development, manufacture and commercialization of innovative diagnostic imaging agents and products, and Progenics Pharmaceuticals, Inc. (NASDAQ: PGNX) ("Progenics"), an oncology company developing innovative medicines and artificial intelligence to find, fight and follow cancer, today announced that they have entered into an Amended and

7

Restated Agreement and Plan of Merger (the "Amended Agreement") which amends the previously announced definitive Agreement and Plan of Merger dated as of October 1, 2019 (the "Original Agreement"). The Amended Agreement has been unanimously approved by the Boards of Directors of both companies.

Under the terms of the Amended Agreement, Lantheus will acquire all of the issued and outstanding shares of Progenics common stock at a fixed exchange ratio whereby Progenics stockholders will receive, for each share of Progenics stock held at the time of the closing of the merger, 0.31 of a share of Lantheus common stock, increased from 0.2502 under the Original Agreement, together with a non-tradeable contingent value right ("CVR"). The CVR is payable in two separate cash payments if PyL$^{TM}$ ($^{18}$F-DCFPyL), Progenics' prostate-specific membrane antigen targeted imaging agent designed to visualize prostate cancer currently in late stage clinical development ("PyL"), exceeds net sales thresholds of $100 million in 2022 and $150 million in 2023. As a result of the increase in the exchange ratio, following the completion of the merger, former Progenics stockholders' aggregate ownership stake will increase to approximately 40% of the combined company from approximately 35% under the terms set forth in the Original Agreement.

Mary Anne Heino, President and Chief Executive Officer of Lantheus, said, "After continued integration planning with Progenics and close collaboration with Progenics' reconstituted Board of Directors, we are even more excited about the potential value we can unlock by combining our two businesses. We remain confident that together, we will create a platform that leverages Lantheus' long-standing expertise in complex manufacturing, supply chain and commercial excellence, with Progenics' three leading FDA approved products, clinical pipeline and development capabilities. Our team enthusiastically shares the view of Progenics stockholders in the long-term growth potential of the Progenics product portfolio and, with our complementary strengths, our combined company will be better able to serve patients and healthcare professionals across the continuum of critical diagnosis and care. We are also pleased with the progress the two companies have made toward closing throughout our discussions."

Gérard Ber, Ph.D. and Mr. Heinz Mäusli, two members of Progenics' reconstituted Board, will join the Lantheus Board upon closing. Lantheus will reduce its current ten member Board to nine members at its 2020 stockholders meeting, or sooner if this transaction closes before then. Lantheus will further reduce its Board to eight members at its 2021 stockholders meeting. As previously announced, the combined company will be led by Lantheus Chief Executive Officer Mary Anne Heino, who will be supported by Chief Financial Officer Robert J. Marshall Jr., CFA, and Chief Operations Officer John Bolla.

Brian Markison, Chairman of the Board of Lantheus, said, "We are excited about the additions of Dr. Ber and Mr. Mäusli to our board. Both Dr. Ber and Mr. Mäusli add experience in radiopharmaceuticals with deep manufacturing, operating, finance and compliance experience."

Ann MacDougall, Interim Chair of Progenics' Board, said, "We have been pleased to work with Lantheus on the amended merger agreement. The Progenics' Board has unanimously determined that the combination with Lantheus under the updated terms is in the best interest of our stockholders. The merger creates a stronger combined platform that offers an innovative and diversified diagnostic and therapeutics portfolio while ensuring stockholders the opportunity to participate in the future potential upside through enhanced ownership and the CVRs. The reconstituted Progenics Board, assisted by independent financial and legal advisors, has evaluated the business prospects and operations of Progenics as a stand-alone business as well as the value of the Progenics interest in the combined company under the revised terms in the merger transaction, and have concluded that the combination is the better path forward. We are also pleased to have our directors, Dr. Gérard Ber and Mr. Heinz Mäusli, join the Board of the combined company to enhance its prospects for future success."

David Mims, Interim CEO of Progenics, added, "We believe the combination will add significant value to both companies' stockholders, especially in light of the recent positive results we achieved with our PyL Phase 3 CONDOR trial and our product pipeline and research and development capabilities."

**Lantheus' Strategic Plan for Progenics**

As previously announced on November 7, 2019, Lantheus provided a strategic plan that provides stockholders of both companies with a clear and thoughtful strategy in which Lantheus will leverage its existing infrastructure and long-standing expertise to deliver on the promise of Progenics' product portfolio and maximize value for all stockholders. The Lantheus team remains confident in the combination with Progenics as Lantheus has a clear track record of creating significant stockholder value, built on in-house operational excellence, commercial expertise, financial discipline and robust corporate governance.

In addition, through its extensive due diligence process and continued discussions with the Progenics Board, Lantheus has identified actions and investments in 2020 that will help enhance the progress of AZEDRA and the PyL and 1095 programs. Lantheus remains well-positioned to ensure that the Progenics portfolio has the benefit of access to cost-effective capital, manufacturing capabilities, logistical support and personnel resources to succeed.

> With a focus on commercial, operational and clinical enhancements under the management of its proven team, Lantheus' strategic plan represents the highest value, most certain and expedient path forward to drive significant, long-term value for stockholders of both Progenics and Lantheus.
>
> **Strong Financial Rationale**
>
> As a result of the recently reported positive top line results from the PyL Phase 3 CONDOR trial and ongoing integration planning, Lantheus believes this combination can generate double digit revenue growth, as well as drive margin expansion through the previously disclosed 2023 planning horizon. Accordingly, Lantheus continues to believe it can achieve adjusted EPS accretion in the third year following the close of the transaction.
>
> **Additional Transaction Details**
>
> Lantheus has also agreed to make available to Progenics up to $10 million of bridge financing on terms mutually agreed upon by the parties. The merger transaction is expected to close early in the second quarter of 2020, subject to approval by Lantheus and Progenics stockholders and satisfaction of other customary closing conditions.
>
> Upon completion of the acquisition, the combined company will continue to be headquartered in North Billerica, Massachusetts and will trade on the NASDAQ under the ticker symbol: LNTH.

28. The Merger Consideration represents inadequate compensation for Progenics' shares given the Company's strong recent financial performance and bright economic outlook. Therefore, it is imperative that shareholders receive the material information (discussed in detail below) that Defendants have omitted from the Proxy, which is necessary for shareholders to properly exercise their corporate suffrage rights and in order to cast an informed vote on the Proposed Merger.

**B.     The Proxy Omits Certain Material Information**

29. On March 19, 2020, Defendants authorized the filing of the materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to

ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information concerning the financial analyses conducted by BofA, information which is necessary for Progenics' shareholders to make an informed decision on how to vote their shares, in violation of Sections 14(a) and 20(a) of the Exchange Act, and SEC Rule 14a-9.

30. ***First***, the Proxy omits material information concerning the background of the merger and the events leading up to amending and restating the Original Agreement. Indeed, the Proxy omits critical information concerning the bankers to the Proposed Transaction.

31. The Proxy omits the reasons why the Board dismissed Jefferies as a financial advisor. In fact, no mention is made of Jefferies at all in the Proxy following a discussion of their role in the background of the merger. It is clearly material if Jefferies was fired for cause or if the Board believed Jefferies had taken actions to warrant their dismissal. Indeed, Progenics previously asked shareholders to rely on the fairness opinion provided by Jefferies—yet inexplicably, the reasons why such a critical party is no longer involved in the merger are completely omitted and so Defendants must disclose this information.

32. Similarly, the Proxy also fails to disclose what compensation Jefferies received, if any, upon the consummation of the Proposed Transaction. In an S-4 filed with the SEC on November 12, 2019, on page 137 it plainly states the "balance [of part of Jefferies' compensation] is payable contingent upon completion of the merger." Yet, nowhere in the Proxy is this mentioned. Progenics shareholders are potentially still paying millions for Jefferies' fees for their role in the Proposed Transaction, yet all information regarding this is omitted from the Proxy.

33. The Proxy also fails to disclose the amount of compensation BofA received for its previous investment banking and/or financial services performed for Progenics. Disclosure of any

"relationship that existed during the past two years or is mutually understood to be contemplated *and any compensation received or to be received* as a result of the relationship between" a financial advisor and the subject company or its affiliates is required pursuant to 17 C.F.R. § 229.1015(b)(4) (emphasis added). Such information is undoubtedly material to Progenics shareholders. It is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own proprietary financial interest in a proposed transaction must be carefully considered when assessing how much credence to give its analysis. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the transaction to the shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders. Those concerns would only be exacerbated by the fact that a previous financial advisor had already been dismissed by the Board.

34. The Proxy fails to describe what efforts, if any, were put in place to safeguard the interests of minority shareholders. As a condition of the merger, certain current directors of Progenics, backed by Velan, will be nominated onto the board of Lantheus following the consummation of the merger. This benefit, unique to Velan and certain Board members, was procured contemporaneously with negotiations over the Merger Consideration. Considering that there was no committee of disinterested directors created to oversee the sales process, it is plainly material to shareholders to know that their interests were fairly advocated for and that the directors took steps to maximize value for their shares. As such, Defendants must disclose the steps taken to safeguard their interests.

35. ***Second***, the Proxy omits or misleading states material information concerning the financial analyses conducted by BofA. The information contained in these analyses is critical to shareholders as it is upon these analyses that BofA has determined the Proposed Transaction to be 'fair.' Without providing the information, the analyses cannot be understood by shareholders, and so BofA's declaration of 'fairness' becomes little more than an assertion.

36. With respect to BofA's *Discounted Cash Flow Analysis* of Progenics, the Proxy fails to disclose: (i) the inputs and assumptions behind applying a perpetuity growth rate of (10.0)% to 0.0%; (ii) the inputs and assumptions behind selecting a discount rate range of 10.50% to 14.00%; (iii) the estimated present value of the NOLs; and (iv) the terminal values.

37. With respect to BofA's *Discounted Cash Flow Analysis* of Lantheus, the Proxy fails to disclose: (i) the inputs and assumptions behind applying a perpetuity growth rate of 1.25 to 2.25%; (ii) the inputs and assumptions behind selecting a discount rate range of 7.75% to 10.00%; (iii) the estimated present value of the NOLs; and (iv) the terminal values.

38. These key inputs are material to Progenics stockholders, and their omission renders the summaries of BofA's *Discounted Cash Flow Analyses* incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a DCF analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. This dazzling

> variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices. The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness. This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78. Without the above-mentioned information, Progenics stockholders cannot evaluate for themselves the reliability of BofA's *Discounted Cash Flow Analyses*, and so make a meaningful determination of whether the implied equity value per share ranges reflect the true values of Progenics and Lantheus or was the result of an unreasonable judgment by BofA, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

39. With respect to BofA's *Selected Companies Analyses* for both Progenics and Lantheus, the Proxy omits the individual multiples and metrics for the companies observed by BofA. A fair summary of a selected companies analysis requires the disclosure of the individual multiples for each company observed. Merely providing the low, high, and median values of the multiples that a banker applied without any further information is insufficient, as shareholders are unable to assess whether the banker applied appropriate multiples, or, instead, applied unreasonably low multiples in order to present the Merger Consideration in the most favorable light. Accordingly, the omission of this material information renders the summary of this analysis provided in the Proxy misleading.

40. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the Shareholder Vote, Plaintiff will be unable to make an informed decision concerning whether to vote his shares, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

# COUNT I

**(Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9)**

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

42.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

43.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9ra.

44.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

45.     Defendants have issued the Proxy with the intention of soliciting the Company's common stockholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding the valuation analyses performed by BofA in support of its fairness opinion.

46.     In so doing, Defendants made untrue statements of fact and/or omitted material

15

facts necessary to make the statements made therein not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

47. The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that BofA reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by BofA, as well as its fairness opinion and the assumptions made and matters considered in connection therewith. Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review BofA's analyses in connection with their receipt of its fairness opinions, question BofA as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there were no material misstatements or omissions.

48. The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

49. The Company is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

50. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

51. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52. The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of the Company, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in

17

the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

53. Each of the Individual Defendants were provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

54. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

55. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

56. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

57. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

58. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **COUNT III**

**(Against the Individual Defendants for Breach of Their
Fiduciary Duty of Candor/Disclosure)**

59. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60. By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all of the Company's shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they sought shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

61. As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving and/or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public stockholders.

62. The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and irreparable harm.

63. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction until the Company discloses the material information discussed above which was omitted from the Proxy;

B. Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting any such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 8, 2020

**MONTEVERDE & ASSOCIATES PC**

*/s/ Juan E. Monteverde*
Juan E. Monteverde (JM-8169)
The Empire State Building
350 Fifth Avenue, Suite 4405
New York, NY 10118
Tel:(212) 971-1341
Fax:(212) 202-7880
Email: jmonteverde@monteverdelaw.com

*Attorneys for Plaintiff*